IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| MICHAEL RODRIGUEZ, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 1:17CV165 |
| ELON UNIVERSITY, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, Michael Rodriguez, initiated this action in state court on January 25, 2017, against Defendant, Elon University ("Elon"), alleging employment discrimination based on national origin in violation of 42 U.S.C. § 2000e et seq. ("Title VII"), and based on race in violation of 42 U.S.C. § 1981 ("Section 1981"). (ECF No. 2.) On February 27, 2017, Elon removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1441 and 1446. (ECF No. 1.) Before the Court are Elon's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, (ECF No. 20), and Defendant's Motion for Continuance of Trial, (ECF No. 26). For the reasons outlined herein Elon's summary judgment motion is granted, and the motion for continuance is denied as moot.

**I. BACKGROUND**

Plaintiff was hired by Elon in August 2009 as an Assistant Professor of Marketing in the Marketing and Entrepreneurship Department of the Love School of Business ("LSB"). (ECF No. 20-1 at 1–2; ECF No. 23-5 ¶ 6.) Plaintiff, who is Hispanic and of Puerto Rican

descent, was the only Hispanic employee at the LSB during his employment at Elon. (ECF No. 23-5 ¶¶ 4, 7.) In April 2012, Plaintiff was named Faculty Director of Elon's Chandler Family Professional Sales Center ("Sales Center"), and he "held the dual role of Faculty Director and Assistant Professor." (ECF No. 20-2 ¶ 4; ECF No. 23-5 ¶ 8.) As Faculty Director, Plaintiff coached a Sales Team that competed in sales competitions on behalf of Elon. (*See* ECF No. 20-1 at 6–7, 36–37; ECF No. 20-11 at 1.)

During the 2014–2015 academic year, Plaintiff sought a promotion and tenure at Elon, (ECF No. 20-2 ¶ 11; ECF No. 23-5 ¶ 25), by submitting his portfolio for evaluation by the Promotions and Tenure Committee (the "Committee") and Raghuram Tadepalli, Dean of LSB, (ECF No. 20-3 at 4; *see* ECF Nos. 20-6, 20-7, 20-8). The Committee was comprised of eight faculty members, none of whom were known to Plaintiff. (ECF No. 20-1 at 42–43; ECF No. 20-16.) Pursuant to Elon's policy, Dean Tadepalli and the Committee each, separately, considered Plaintiff's portfolio, (*see* ECF No. 20-3 at 4), and each subsequently tendered separate "no" recommendations to Elon's Provost regarding Plaintiff's application, (ECF No. 20-2 ¶ 12; ECF No. 20-9 ¶¶ 10–12; ECF No. 20-10; ECF No. 20-13 ¶ 17; ECF No. 20-14). A joint meeting of the Provost, the Committee, and Dean Tadepalli was held during which the Committee and the Dean shared with the Provost "the reasons for their decisions not to recommend Rodriguez" for promotion and/or tenure. (ECF No. 20-2 ¶ 13; *see* ECF No. 20-3 at 4–5.) As a result, the Provost, who has "never recommended a candidate for promotion and/or tenure who received 'no' recommendations from both the Committee and the appropriate dean," did not recommend to the President of Elon that Plaintiff be granted promotion or tenure. (ECF No. 20-2 ¶¶ 9, 17; *see* ECF No. 20-3 at 5.) Based on the Provost's

2

decision, the President, who likewise, "has never recommended anyone for promotion or tenure when the [P]rovost has not recommended it," declined to recommend that Plaintiff's request for promotion and/or tenure be granted by the Board of Trustees, the final decision-makers. (ECF No. 20-2 ¶ 19.) Ultimately, the Board denied Plaintiff's application for promotion and/or tenure. (*See* ECF No. 23-5 ¶ 37.) In accordance with Elon's policy, Plaintiff "was offered a one-year terminal contract for the 2015–2016 academic year," which he did not accept. (ECF No. 20-2 ¶¶ 23–24.) Plaintiff's contract with Elon expired on June 30, 2015. (ECF No. 23-5 ¶ 43.)

Plaintiff alleges that Elon's denial of his application for promotion and/or tenure was based on his national origin in violation of Title VII, and based on his race in violation of Section 1981. (ECF No. 2 ¶¶ 25–31.) Further, Plaintiff alleges a claim of constructive discharge, (*id.* ¶¶ 27, 30), and in his response brief, for the first time, raises a Title VII retaliation claim, (*see* ECF No. 24 at 7–9, 12–14). Elon has moved for summary judgment on all claims arguing "that there is no genuine issue of material fact regarding Plaintiff's claims." (ECF No. 20 at 1.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence and "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). A genuine issue for trial exists only when "there is sufficient evidence favoring

3

the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

In opposing a properly supported motion for summary judgment, the nonmoving party cannot rest on "mere allegations or denials." *Id.* at 248 (internal quotation marks omitted). The adverse party must set forth specific facts showing there is a genuine issue for trial. *Id.* at 250. *See* Fed. R. Civ. P. 56(c)(1)(A) (stating that a party must "cit[e] to particular parts of . . . the record, including depositions, documents, . . . affidavits or declarations, . . . admissions, interrogatory answers, or other materials"). "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

### III. DISCUSSION

#### A. Plaintiff's Failure to Promote Claims

Plaintiff alleges that he was discriminated against based on his national origin in violation of Title VII, and based on his race in violation of Section 1981, when Elon denied his application for promotion and tenure. (ECF No. 2 ¶¶ 25–31.)

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). Like Title VII, Section 1981 provides "a federal remedy against discrimination in private employment on

4

the basis of race," *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975). "In failure-to-promote cases such as this, 'the framework of proof for disparate treatment claims . . . is the same for actions brought under Title VII, or § 1981, or both statutes." *Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 545 n.3 (4th Cir. 2003) (alteration in original) (quoting *Mallory v. Booth Refrigeration Supply Co.*, 882 F.2d 908, 910 (4th Cir. 1989)). *See Williams v. Giant Food Inc.*, 370 F.3d 423, 430 n.5 (4th Cir. 2004) ("The same elements are required for failure-to-promote claims alleged under Title VII and § 1981, and the district court properly considered these claims together."). Accordingly, Plaintiff's Title VII and Section 1981 claims, which rely on the same factual allegations, will be analyzed together for the purposes of the instant motion.

A plaintiff can establish discrimination under Title VII and Section 1981 by direct evidence or by utilizing the *McDonnell Douglas* burden-shifting framework.[1] *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996). Because the Court finds that Plaintiff has failed to bring forth direct evidence of discrimination,[2] Plaintiff must, therefore, utilize the *McDonnell Douglas* burden-shifting framework to establish his claim. This framework first requires that Plaintiff establish a prima facie case of failure to promote based on national origin or race, by showing that: (1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) Elon denied him the promotion and/or tenure under circumstances giving rise to an inference of unlawful

---

[1] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05(1973).

[2] "Direct evidence is evidence from which no inference is required . . . [such as] a decisionmaker's statement that he did not promote a plaintiff due to his race." *Cherry v. Elizabeth City State Univ.*, 147 F. Supp. 3d 414, 421 (E.D.N.C. 2015).

5

discrimination. *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994). "Ultimately, the establishment of a prima facie case of employment discrimination requires proof by a preponderance of the evidence that the plaintiff was not promoted or dismissed under conditions which, more likely than not, were based upon impermissible racial [or other] considerations." *Gairola v. Commonwealth of Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1286 (4th Cir. 1985) (internal quotation marks omitted). Once Plaintiff has established a prima facie case under *McDonnell Douglas*, the employer bears the burden of advancing a legitimate, nondiscriminatory reason for its failure to promote Plaintiff. *See Dallas v. Giant Food, Inc.*, 187 F. Supp. 2d 505, 509 (D. Md. 2002) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)), *aff'd*, *Skipper v. Giant Food, Inc.*, 68 F. App'x 393 (4th Cir. 2003). If the employer proffers such a reason, the burden then shifts back to Plaintiff to show, by a preponderance of the evidence, that the reason provided by the employer was pretext for discrimination. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 646 (4th Cir. 2002). Although Elon acknowledges that Plaintiff has met his burden with respect to "establishing the first two elements of his prima facie case" of discrimination, it argues that Plaintiff's claim nonetheless fails because he cannot satisfy the third and fourth elements—that he was qualified for the position, and that Elon's denial of promotion and/or tenure occurred under circumstances that give rise to an inference of unlawful discrimination. (ECF No. 21 at 13, 14.)

> *1. Whether Plaintiff was qualified for promotion and/or tenure*

Where, as in this case, Plaintiff's claims arise out of decision-making in an academic setting, this Court proceeds cautiously. The Fourth Circuit has recognized that "while Title VII is available to aggrieved professors, we review professorial employment decisions with

6

great trepidation." *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 376 (4th Cir. 1995). In reviewing such decisions, courts "do not sit as a super personnel council," *id.* (internal quotation marks omitted), and will not interfere with an academic institution's decision to deny tenure in order to impose their own judgment, *see Smith v. Univ. of N.C.*, 632 F. 2d 316, 345 (4th Cir. 1980). Thus, the Court's review is narrow and limited to the question whether the appointment or promotion was denied for discriminatory reasons. *Id.* at 346.

Plaintiff argues generally that he was highly qualified for promotion and tenure, (*see* ECF No. 24 at 2–4), and offers the following in support: (1) the declaration of the former Dean of the LSB who testified that, in her opinion, Plaintiff was highly qualified for promotion and/or tenure, (ECF No. 23-9 ¶¶ 5, 16–32); (2) the declaration of a former student who testified that Plaintiff was a strong teacher-scholar as compared to his peers and that Plaintiff's dedication to Elon, the Sales Center, and his students were strong as compared to his peers, (ECF No. 23-7 ¶¶ 9–10); (3) the declaration of a former member of the Board of Advisors of the Elon School of Business and the Sales Center who observed Plaintiff to be a strong teacher-scholar "whose dedication to Elon, the Sales Center, his students and the Elon community was strong as compared to his peers," (ECF No. 23-8 ¶¶ 9–12); and (4) the declaration of Plaintiff's former colleague who testified that, based on his observations, Plaintiff was "a strong teacher-scholar, as compared to his peers," and Plaintiff "was highly qualified for a promotion and tenure," (ECF No. 23-13 ¶¶ 6, 10–15). In addition, although there was considerable tension between Plaintiff and Coleman Rich, chair of LSB's Marketing and Entrepreneurship Department, Mr. Rich recommended that Plaintiff be granted promotion to Associate Professor and tenure, stating that Plaintiff's work was exceptional.

7

(ECF No. 20-1 at 10; ECF No. 23-6 at 162–164.)  Viewing this evidence in the light most favorable to Plaintiff and giving all reasonable inferences to him, this Court concludes that Plaintiff has made a sufficient showing on this element of his prima facie case.  *See Weaks v. N.C. Dep't of Transp.*, 761 F. Supp. 2d 289, 298 (M.D.N.C. 2011) ("The burden to establish a *prima facie* case of disparate treatment is not onerous." (quoting *Burdine*, 450 U.S. at 253)).

> 2. *Whether Plaintiff was denied promotion and tenure under circumstances giving rise to an inference of unlawful discrimination*

Assuming, for the sake of argument, that Plaintiff has satisfied the first two elements of his prima facie case (which are uncontested by Elon), and having concluded above that Plaintiff has satisfied the third element, Defendant is nonetheless entitled to summary judgment based on Plaintiff's failure to provide sufficient evidence to satisfy the fourth element of his prima facie case of discrimination.

"[T]he ultimate burden of persuading the court that [a plaintiff] has been the victim of intentional discrimination rests with [the plaintiff]." *Jiminez*, 57 F.3d at 377.  Here, in Plaintiff's opposition brief, he relies almost exclusively on his own declaration to support his claims of discrimination.  (ECF No. 24 at 4–7.)  Such self-serving declarations have little to no value when considering a motion for summary judgment.  *See, e.g., Riley v. Honeywell Tech. Sols., Inc.*, 323 F. App'x 276, 278 n.2 (4th Cir. 2009) (stating that plaintiff's self-serving contentions that he was treated unfairly "were properly discounted by the district court as having no viable evidentiary support"); *Nat'l Enters., Inc. v. Barnes*, 201 F. 3d 331, 335 (4th Cir. 2000) (finding that a non-moving party's self-serving affidavit was insufficient to withstand summary judgment).  Plaintiff offers the following to support his contention that he was under constant scrutiny and harassment as compared to his non-Hispanic peers:

8

(a) "Upon acceptance of the additional responsibilities [as] Faculty Director [of the Sales Center], [he] did not receive a raise or similar salary and compensation compared to the former white faculty director or his peers at comparable academies." (ECF No. 24 at 4 (citing ECF No. 23-5 ¶ 9).)

(b) At some time during Plaintiff's tenure at Elon, he chaired a subcommittee for the Diversity Committee, and in doing so, "[h]e observed that the faculty was not racially diverse and widely held prejudices against non-Caucasians. When he made his observations known to the committee chair, he was told that his contributions were not welcome." (*Id.* (citing ECF No. 23-5 ¶¶ 10–11).)

(c) "He was . . . the subject of insensitive comments by faculty peers about being Puerto Rican, and their erroneous inquiries about whether his family possessed 'green cards' to live and work in the United States." (*Id.* (citing ECF No. 23-5 ¶ 11).)

(d) He "was falsely accused by white administrators of mishandling white sales team members and harassing white female administrators while assisting them and seeking their support for his work on the sales team." (*Id.* (citing ECF No. 23-5 ¶ 13).)

(e) His department chair, Mr. Rich, a white male, "had spoken disparagingly to an African-American student about playing basketball, [and] he spoke up against [Mr. Rich] for the student." (*Id.* (citing ECF No. 23-5 ¶ 13).)

(f) He stood up for a Hispanic student against Mr. Rich when the student's research project "was inexplicably canceled." (*Id.* (citing ECF No. 23-5 ¶ 14).)

(g) When Mr. Rich "conducted a secret investigation into a student's health treatment during a sales competition, [Plaintiff] complained that the investigation and handling of the matter was unfair as compared to similar conduct by non-Hispanic faculty." (*Id.* (citing ECF No. 23-5 ¶ 15).)

> (h) Elon administrators, including Mr. Rich, contacted a white faculty candidate "to replace [Plaintiff] on the faculty and at the Sales Center. (*Id.* (citing ECF No. 23-5 ¶ 16).)

Even if true, the above statements in Plaintiff's declaration bear no connection to the factors considered by the Committee and Dean Tadepalli with respect to their decision to deny Plaintiff's application for promotion and/or tenure. *See Harris v. Mayor & City Council of Baltimore*, No. SKG-06-2415, 2009 WL 10677049, at *3–5 (D. Md. Mar. 24, 2009) (finding that evidence of derogatory remarks made to plaintiff, as well as demeaning tasks assigned to plaintiff, which were unrelated to plaintiff's failure to be promoted, were "insufficient to create an inference of discrimination in the failure to promote under Title VII"). Moreover, these assertions—which, in general, lack corroboration, lack dates, and, in part, refer to unnamed individuals—amount to little more than allegations. Thus, Plaintiff has failed to show, by a preponderance of evidence, that the circumstances surrounding Elon's denial of his application for promotion and/or tenure give rise to an inference of discrimination.

Plaintiff also argues that he satisfies the fourth element of his prima facie case because after his rejection, "[a] non-minority candidate was sought to replace him at the Sales Center" and "[a] tenure position remained open, while a less-qualified non-minority professor[ ] was promoted." (ECF No. 24 at 11.) Indeed, a minority plaintiff may establish the fourth element by presenting evidence that the position sought was filled by a non-minority. *See Carter*, 33 F.3d at 458 (stating that "[t]o satisfy the fourth prong, [the African-American plaintiff] need only show that the position was filled by a white applicant"); *Isaac v. Hous. Auth. of Baltimore City*, No. GLR-16-327, 2016 WL 5146416, at *4 (D. Md. Sept. 21, 2016) ("There is an inference

10

of unlawful discrimination where an employer fills a position with an applicant outside the plaintiff's protected class.). However, the fact that Mr. Rich, who had recommended that Plaintiff be granted promotion and tenure,[3] subsequently discussed Plaintiff's former position with a former white faculty member, (*see* ECF No. 23-5 ¶ 16; ECF No. 23-13 ¶¶ 3, 6, 10, 16–18), does not strengthen Plaintiff's case. Moreover, according to the record, "[o]f the twenty-seven candidates for promotion and/or tenure in the 2014–2015 academic year, six candidates, including [Plaintiff], were not recommended." (ECF No. 20-2 ¶ 25.) Excluding Plaintiff, four of the five candidates who were not recommended were Caucasian, and the fifth candidate not recommended was American Indian. (*Id.*) Additionally, "[o]ne of the candidates for promotion to associate professor at the law school was Hispanic in the 2014–2015 academic year," and he received the Provost's recommendation and was promoted. (*Id.*) "[C]ourts have held that a plaintiff did not satisfy the fourth prong of the test for failure to promote where applicants of the same race . . . as the plaintiff filled the positions for which he had applied." *Sonpon v. Grafton Sch., Inc.*, 181 F. Supp. 2d 494, 500 (D. Md. 2002). Thus, Plaintiff has failed to establish, by a preponderance of the evidence, that Elon failed to grant his application for promotion and/or tenure under circumstances giving rise to an inference of unlawful discrimination.

Assuming, however, that Plaintiff had established a prima facie case of discrimination, the Court finds that Elon has articulated several legitimate, non-discriminatory reasons for declining to promote or extend an offer of tenure to Plaintiff. Elon's "evaluation system for teaching faculty applying for tenure and/or promotion involves six stages" during which

---

[3] (*See* ECF No. 23-6 at 162–164.)

11

recommendations are made by the respective deans, the Committee, the Provost, the President, and ultimately, by the Board of Trustees. (ECF No. 20-3 at 4–5.) The Committee, which was comprised of eight individuals with whom Plaintiff was not familiar, (ECF No. 20-1 at 42–43; ECF No. 20-16), based its promotion and tenure decisions "exclusively upon the portfolios compiled and submitted" by each candidate, and did not consult individuals or materials outside of the candidate's portfolio, (ECF No. 20-13 ¶ 4). Further, the Dean and the Committee conducted their respective evaluations of each candidate's portfolio separately. (ECF No. 20-9 ¶¶ 5, 13; ECF No. 20-13 ¶¶ 7–11, 22.) The record reflects that, in recommending denial of Plaintiff's application for promotion and/or tenure, both the Committee and the Dean expressed similar concerns about Plaintiff with respect to each of the three criteria for evaluation of tenure-track faculty, namely: (1) Teaching; (2) Contributions to the Life of the University (Service); and (3) Professional Activity (Scholarship). (ECF No. 20-2 ¶ 14; *see* ECF No. 20-3 at 6–8.) Specifically, both the Committee and the Dean: (1) expressed concerns about Plaintiff's teaching in that Plaintiff favored certain students, namely, the sales team students; that he was unresponsive and unavailable outside of class; that he mistreated students; and that he had failed to meet teaching and advising expectations necessary for tenure and promotion; (2) expressed concerns that Plaintiff did not meet the published standards for service and contributions to the life of the University community, in that he relied on his paid position as Faculty Director of the Sales Center to satisfy his service component instead of participating in volunteer activities; that there was "breadth but not depth" of service; and that "[h]is relationship with staff members [was] 'abominable'"; and (3) expressed concerns that, although Plaintiff listed fourteen publications in his portfolio, more

information was needed regarding the quality and purpose of Plaintiff's scholarship. (ECF No. 20-2 ¶¶ 14–15; ECF No. 20-4 at 1–2; ECF No. 20-13 ¶¶ 14–16; ECF No. 23-6 at 300.) The record is devoid of any credible evidence showing that Plaintiff's race or national origin played any role in Elon's decision to deny Plaintiff's application for promotion and/or tenure.

Nor has Plaintiff demonstrated that the above-referenced concerns were false, or that they were a mere pretext for discrimination. A plaintiff's burden of demonstrating pretext "merge[s] with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Holland v. Wash. Homes,* 487 F.3d 208, 214 (4th Cir. 2007) (quoting *Burdine,* 450 U.S. at 256). "When evaluating pretext, it is not within [the Court's] purview to question whether the employer's proffered basis for the disputed action 'was wise, fair, or even correct, . . . so long as it truly was the reason for' the action." *Ousley v. McDonald*, 648 F. App'x 346, 349 (4th Cir. 2016) (quoting *Laing v. Fed. Express Corp.*, 703 F.3d 713, 722 (4th Cir. 2013)). Thus, "[i]n order to succeed at this stage, the plaintiff must 'show both that the reason advanced was a sham *and* that the true reason was an impermissible one under the law.'" *Id.* at 349 (quoting *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1235 (4th Cir. 1995). "An employer is entitled to summary judgment on the issue of pretext if the employee 'create[s] only a weak issue of fact as to whether the employer's reason [is] untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred.'" *Howard v. Coll. of the Albermarle*, 262 F. Supp. 3d 322, 332 (E.D.N.C. 2017) (alterations in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)), *aff'd*, 697 F. App'x 257 (4th Cir. 2017).

In arguing that Elon's reasons for denial were pretextual, Plaintiff asserts that "there is lots of evidence that Elon's stated reasons for rejecting [him] for promotion is nothing more than a thinly veiled cover-up for an unlawful reason." (ECF No. 24 at 14.) However, rather than citing to materials in the record to support this assertion, Plaintiff merely characterizes what he deems to be evidence showing pretext. (*See* ECF No. 24 at 14–17.) Yet, such characterization of the purported evidence, without citations to the record, does not set forth a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."); *see also United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010) ("[S]aying so doesn't make it so; summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact, and it [is] not the district court's job to sift through the record and make [the appellant's] case for him.").

Further, Plaintiff appears to contend, in part, that Dean Tadepalli and Bill Burpitt, a faculty member who played no role in Elon's promotion and tenure evaluation process, (*see* ECF No. 20-1 at 21; ECF No. 20-16), conspired to prevent Plaintiff from achieving promotion and/or tenure, (ECF No. 24 at 14–15). It also appears that, in support of this theory, Plaintiff relies on an email exchange between Dean Tadepalli and Mr. Burpitt. (*See* ECF No. 23-6 at 294–296.) To the extent Plaintiff so relies, the Court's review of the email shows that, while Dean Tadepalli expressed frustration over Plaintiff's unwillingness to resolve his differences with his department chair, Mr. Rich, there is no suggestion that the Dean's decision not to recommend Plaintiff for promotion and tenure was based on Plaintiff's race or national origin.

14

Thus, there is no credible evidence before the Court to show that Elon's proffered reasons for its denial of Plaintiff's application for promotion and/or tenure were false and motivated by unlawful discrimination.

Rather, the evidence before the Court reflects that references to Plaintiff's race and national origin were injected by Plaintiff himself. (*See, e.g.,* ECF No. 20-5 at 2 (upon learning that he had not received promotion or tenure during a meeting with the Provost, Plaintiff "indicated that he could not believe that this institution had turned down a young Latino male"); ECF No. 23-2 at 3 (in an email response to Dean Tadepalli, Plaintiff writes that "being a Puerto Rican in an all-white high school, college, Wall Street, and being the only Latino at the LSB, I know and have experienced harassment"); ECF No. 23-5 ¶ 36 (Plaintiff testified that Dean Tadepalli "misrepresented" facts about his encounter with a colleague to allege that Plaintiff "harassed staff inferring that I was a hot-headed Latino").)

In light of Plaintiff's failure to establish a prima facie case of failure to promote based on race and national origin, as well as Plaintiff's failure to demonstrate that Elon's evidence of its non-discriminatory reasons for denial of Plaintiff's application were pretextual, the Court concludes that there is no genuine dispute for trial. Elon is, therefore, entitled to judgment as a matter of law on Plaintiff's failure to promote claim under Title VII and Section 1981.

### B. Constructive Discharge

Plaintiff next argues that he was constructively discharged by Elon when he was denied promotion and tenure and, instead, offered a one year terminal contract with Elon. (ECF No. 24 at 17; *see* ECF No. 2 ¶¶ 27, 30.)

"An employee is entitled to relief absent a formal discharge, 'if an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit.'" *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F. 3d 180, 186 (4th Cir. 2004) (quoting *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1353–54 (4th Cir. 1995). The analysis for constructive discharge is the same whether the claim is brought pursuant to Section 1981 or Title VII. *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 667–68 (D.S.C. 2017). A plaintiff alleging constructive discharge must prove the following: (1) deliberateness of the employer's action; and (2) intolerability of the working conditions. *Honor*, 383 F.3d at 186–87. "Constructive discharge claims are held to a high standard, and even truly awful working conditions may not rise to the level of constructive discharge." *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 783 (D. Md. 2010) (internal quotation marks and citation omitted).

To prove deliberateness, the plaintiff must show that the employer specifically intended its actions "as an effort to force the employee to quit." *Martin*, 48 F.3d at 1354 (internal quotation marks omitted). The plaintiff can demonstrate deliberateness by presenting actual evidence of the employer's intent "to drive the employee from the job," or circumstantial evidence of such intent, "including a series of actions that single out a plaintiff for differential treatment." *Johnson v. Shalala*, 991 F.2d 126, 131 (4th Cir. 1993). To prove intolerability, the plaintiff must show that, objectively, a reasonable person in his position "would have felt compelled to resign." *Munday v. Waste Mgmt. of N. Am.*, 126 F.3d 239, 244 (4th Cir. 1997). It is insufficient to show "merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the

16

employee subjectively felt compelled to resign." *Blistein v. St. John's Coll.*, 74 F.3d 1459, 1468 (4th Cir. 1996), *overruled on other grounds by Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998).

Here, Plaintiff declined to accept Elon's offer of a one year terminal contract for the 2015–2016 academic year, following the June 30, 2015 expiration of his contract. (ECF No. 20-2 ¶¶ 23–24; ECF No. 23-5 ¶ 43; *see* ECF No. 25-1 at 1.) While it may be foreseeable that a person denied promotion and tenure would resign, Plaintiff has not set forth evidence that Elon's failure to approve his application for promotion and/or tenure was deliberately done for that purpose. In fact, the evidence shows just the opposite. On at least one prior occasion when Plaintiff attempted to resign as Faculty Director, Dean Tadepalli refused Plaintiff's resignation. (*See* ECF No. 20-1 at 9, 13–14, 38–40.) Further, Plaintiff falls woefully short of demonstrating that the conditions of his employment at Elon were intolerable such that a reasonable person would feel compelled to resign. *See Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1132 (4th Cir. 1995) (holding that a reasonable trier of fact could find plaintiff's working conditions intolerable where plaintiff's supervisor "and other co-workers subjected [plaintiff] to epithets about his Iranian origin almost daily and tried to embarrass him in public," causing plaintiff "constant stress" that led to plaintiff having developed an ulcer and eventually having to resign); *Gonzalez v. Smith Int'l, Inc.*, 899 F. Supp. 2d 622, 641 (S.D. Tex. 2010) (finding that a jury might conclude that a reasonable person would feel compelled to resign where plaintiff was subjected to "constant racial epithets" and was told that "there would be more work if 'they' would go back, implying that Hispanics should leave the job so there would be more work for non-Hispanics"). *See also Alcala v. Whirlpool Corp.*, 675 F. Supp. 2d 765, 769 (N.D. Ohio 2009) (explaining that "an employer's failure to promote an employee

'to what [the employee] perceives as [his] rightful position' does not create an 'intolerable' working environment for purposes of constructive discharge" (second alteration in original) (quoting *In re Rodriguez*, 487 F.3d 1001, 1011 (6th Cir. 2007))).

Plaintiff argues that "Elon's decision not to promote [him] was tantamount to his actual termination." (ECF No. 24 at 17.) Also, in his EEOC Charge, Plaintiff states that when he was not given tenure "he chose to constructively discharge" from his position of Assistant Professor of Marketing at Elon. (ECF No. 25-1.) However, Plaintiff's decision to leave his employment because of displeasure with Elon's decision does not rise to the level necessary to establish an intolerable condition. *See Carter*, 33 F.3d at 459 (explaining that mere "[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign"); *see also Melendez v. Bd. of Educ. for Montgomery Cty.*, 711 F. App'x 685, 688 (4th Cir. 2017) (finding that plaintiff's "displeasure with her work assignments and her disagreement with her negative performance evaluations do not suffice to support a constructive discharge claim").

Based on the above, the Court concludes that no reasonable juror could conclude that Elon constructively discharged Plaintiff when they denied his application for promotion and/or tenure, and offered him a one year contract. The Court will, therefore, grant Elon's motion for summary judgment as to Plaintiff's claim of constructive discharge under Title VII and Section 1981.

**C. Retaliation**

Plaintiff raises a Title VII retaliation claim, for the first time, in his memorandum in opposition to Defendant's motion. (ECF No. 24 at 7–9, 12.) There is no claim for retaliation

18

in Plaintiff's Complaint. (*See* ECF No. 2.) "It is well-established that parties cannot amend their complaints through briefing . . . ." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F. 3d 175, 184 (4th Cir. 2013). Moreover, even if Plaintiff had properly alleged such a claim, this Court lacks subject matter jurisdiction to entertain it. "[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Jones v. Calvert Grp., Ltd.*, 551 F. 3d 297, 300 (4th Cir. 2009). The "EEOC [C]harge defines the scope of [a plaintiff's] subsequent right to institute a civil suit" in federal court. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). Further, the claims in a plaintiff's federal court complaint must be "reasonably related to [the] EEOC [C]harge and can be expected to follow from a reasonable administrative investigation." *Id.* Here, on Plaintiff's EEOC Charge, he selects only "National Origin" as the basis for his discrimination claims against Elon. (ECF No. 25-1 at 1.) Plaintiff does not select "Retaliation" which is also listed as an option on the EEOC Charge form. (*Id.*) In addition, Plaintiff fails to outline any particulars in his EEOC Charge to demonstrate that he was subjected to discrimination based on retaliation, nor does he make any reference to retaliation in the EEOC Charge. (*See id.*) Therefore, because Plaintiff's Title VII retaliation claim exceeds the scope of the EEOC Charge, he has failed to exhaust his administrative remedies with respect to this claim. *See Miles v. Dell, Inc.*, 429 F.3d 480, 491–92 (4th Cir. 2005) (affirming lower court finding of failure to exhaust administrative remedies of Title VII retaliation claim where the plaintiff failed to check the retaliation box on the EEOC Charge form, and failed to mention retaliation in the narrative explaining the charge).

Accordingly, this Court lacks jurisdiction to entertain Plaintiff's Title VII retaliation claim and this claim must be dismissed.

**IV.  CONCLUSION**

The Court concludes that Plaintiff has failed to establish a prima facie case that Elon failed to promote him based on his race or national origin.  Plaintiff has likewise failed to establish that he was constructively discharged from his employment at Elon.  Finally, because Plaintiff's Title VII retaliation claim exceeds the scope of his EEOC Complaint, the Court lacks subject matter jurisdiction over this claim.

For the reasons stated herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Elon's Motion for Summary Judgment, (ECF No. 20), is GRANTED and this action is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant's Motion for Continuance of Trial, (ECF No. 26), is DENIED AS MOOT.

This, the 27th day of April, 2018.

/s/ Loretta C. Biggs
United States District Judge